IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RICHARD CONYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-046 |
| | ) | |
| SCOTTIE ROACH and CHABARA DAVIS BRAGG, | ) ) ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Coffee Correctional Facility in Nicholls, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 24), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

I.     PROCEDURAL BACKGROUND

Plaintiff initiated this action on June 13, 2023, naming the following Defendants: (1) Brian Chambers, Warden of JSP, (2) Scottie Roach, JSP Captain, (3) Deputy Warden Bragg, (4) Deputy Warden Possor, and (5) the Georgia Department of Corrections. (Doc. no. 1, p. 4.) Because she is proceeding IFP, the Court screened Plaintiff's complaint on August 1, 2023, and found Plaintiff had arguably stated viable Fourteenth Amendment Equal Protection

1

claims against Defendants Roach and Bragg. (Doc. no. 11.) In a simultaneously entered Report and Recommendation ("R&R"), the Court recommended dismissal of Defendants Chambers, Possor, and the Georgia Department of Corrections, as well as Plaintiff's due process and official capacity claims against all Defendants. (Doc. no. 9.) On August 30, 2023, United States District Judge Dudley H. Bowen adopted the R&R as the Court's opinion. (Doc. no. 13.)

Defendants Bragg and Roach answered Plaintiff's complaint on October 6, 2023, and the Clerk issued a Scheduling Notice setting case deadlines. (Doc. nos. 17-18.) The case proceeded through the standard discovery period, during which Defendants took Plaintiff's deposition remotely. (Doc. no. 24-3, "Conyers Dep."; see also doc. no. 20.) Defendants timely filed a motion for summary judgment, and the Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. nos. 24-25.) The Court also issued its own order granting Plaintiff an extension of time to respond to Defendants' motion and again explained the rights and requirements associated with responding. (Doc. no. 26.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1]

In accordance with Local Rule 56.1, Defendants included a Statement of Undisputed Material Facts with their summary judgment motion. (Doc. no. 24-1, "SUMF.") As

---

[1] The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its August 1, 2023 Order directing service on Defendants Bragg and Roach. (Doc. no. 11, p. 6.)

evidentiary support for his SUMF, Defendants rely on their sworn Declarations based on their personal knowledge and Plaintiff's deposition. (See Conyers Dep.; doc. no. 24-4 ("Bragg Decl."); doc. no. 24-5, "Roach Decl.") The Court deems admitted all facts in the SUMF which find support in the record and Plaintiff has not properly opposed. See Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (per curiam) (finding no error in deeming defendants' statements of material fact admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement).

However, this does not automatically entitle Defendants to summary judgment because as the movants, they continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Though Plaintiff did not respond to Defendants' summary judgment motion, Plaintiff provided sworn testimony at her deposition, and the Court will consider her testimony in its analysis. (See Conyers Dep.) Accordingly, the Court will review the record, including Plaintiff's sworn deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.    FACTUAL BACKGROUND

The events giving rise to this lawsuit occurred in 2023 when Plaintiff, a transgender inmate, was a member of the Faith and Character program at JSP and was assigned to the Faith and Character dormitory. (SUMF, p. 1.) Inmates must have a record of good behavior to be admitted to the Faith and Character program and must maintain good behavior and

comply with security rules to remain in the program and the designated Faith and Character dormitory. (Bragg Decl., ¶ 5.) At the time of the underlying events, Defendant Bragg was the Deputy Warden of Care and Treatment at JSP and Defendant Roach was the Chief of Security at JSP. (Bragg Decl., ¶ 2; Roach Decl., ¶ 2.)

A.   **April 2023 Device Confiscation and Transfer to Segregation**

In April 2023, Defendant Roach and nonparty Lieutenant Greene performed a routine shakedown of all dormitories at JSP. (SUMF, ¶ 3.) While searching the Faith and Character Dormitory, Defendant Roach discovered a tablet in Plaintiff's possession. (Id.) Believing the tablet contained unauthorized applications, Defendant Roach confiscated the device as contraband. (Roach Decl., p. 1.) Though Defendant Roach was unaware at the time, the tablet was registered to an inmate other than Plaintiff, making the tablet contraband for this reason as well. (Id.) After Defendant Roach confiscated the tablet, he transferred Plaintiff to segregation pending an investigation into the tablet and for Plaintiff's behavior after the tablet was confiscated. (SUMF, ¶ 5.) Plaintiff acknowledges she was transferred to segregation due to a pending investigation, but contends she was unaware of the basis for the investigation. (Conyers Dep., p. 25.)

While in segregation, Plaintiff met a cisgender inmate named Joshua Sanders who told Plaintiff he was also placed in segregation for a pending investigation. (Id. at 28, 30.) Additionally, Plaintiff alleges that Lieutenant Greene knowingly returned a contraband tablet to another inmate on a separate occasion. (Id. at 37; SUMF, ¶ 6.) Although Plaintiff alleges Defendant Roach was present during this event, Defendant Roach declares he did not witness Lieutenant Greene returning a contraband tablet, nor was he aware of such an event taking

4

place. (SUMF, ¶ 6.) Defendant Bragg was not present during this alleged event. (Conyers Dep., p. 38.)

### B. Removal from the Faith and Character Program

In early April 2023, several inmates assigned to the Faith and Character program complained to Defendant Bragg on various occasions concerning Plaintiff's conduct. (SUMF, ¶ 10.) Specifically, they alleged Plaintiff repeatedly allowed inmates who did not reside in the Faith and Character dormitory to enter it. (Id.) All inmates are assigned to a specific dormitory and are not permitted to enter a dormitory to which they are not assigned for security purposes. (Id.) After receiving these complaints, Defendant Bragg allowed residents of the Faith and Character dormitory to place signs alerting other residents that no inmates residing outside of the dormitory should be allowed to enter it. (Id. ¶ 11.) Defendant Bragg also personally entered the dormitory and told the residents to not allow inmates assigned to other dormitories to enter. (Id.) Despite these efforts, Defendant Bragg continued to receive complaints Plaintiff was allowing outside inmates to access the dormitory. (Id. ¶ 12.) Defendant Bragg reviewed the dormitory's surveillance cameras and witnessed several instances when Plaintiff allowed entry to outside inmates. (Bragg Decl., ¶ 9.) Due to repeated violations of the rule, Defendant Bragg removed Plaintiff from the Faith and Character program and dormitory. (Id.)

Plaintiff admits she allowed outside inmates to access the Faith and Character dormitory. (Conyers Dep., p. 37.) However, Plaintiff contends other residents of the dorm also allowed entry to outside inmates. (Id. at 44.) Nonetheless, Plaintiff admits Defendant Bragg would have had no knowledge of anyone else that was allowing outside inmates to

access the dormitory, and Defendant Bragg had no information concerning other inmates engaging in the same rule violation. (Id. at 49; see also Bragg Decl., ¶ 10.)

## III. DISCUSSION

Plaintiff alleges the tablet confiscation and subsequent placement in segregation constituted disparate treatment as compared to similarly situated prisoners on account of her gender identity, thus violating her equal protection rights. (Doc. no. 1, p. 5.) Plaintiff further alleges her removal from the Faith and Character program and dormitory was also a violation of her equal protection rights. (Id.) Defendants, moving for summary judgment, argue Plaintiff cannot show a violation of her equal protection rights as she cannot establish dissimilar treatment of similarly situated persons. (Doc. no. 24-2, p. 1.) Defendants also invoke a qualified immunity defense. (Id. at 8-9.) For the reasons stated below, the Court agrees with Defendants' summary judgment argument and need not address the qualified immunity argument.

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving

party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Equal Protection Under the Fourteenth Amendment**

To prevail on a Fourteenth Amendment Equal Protection claim, Plaintiff must prove: "(1) [she] is similarly situated with other prisoners who received more favorable treatment; and (2) [her] discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); see also Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993).  A plaintiff must describe in detail "the comparator's characteristics 'that would be relevant to an objectively

reasonable governmental decision maker.'" Alvarez v. Sec'y Fla. Dep't of Corr., 646 F. App'x 858, 863-64 (11th Cir. 2016) (*per curiam*) (quoting Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007)).

The Eleventh Circuit has further explained that "[d]iscriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." Elston, 997 F.2d at 1406 (citations omitted). "A plaintiff can show discriminatory intent through direct or circumstantial evidence." Glenn v. Brumby, 663 F.3d 1312, 1320 (11th Cir. 2011).

      **C.    Plaintiff's Equal Protection Claims Fail Because Plaintiff Has Not Identified Similarly Situated Prisoners Who Were Treated More Favorably**

Plaintiff's Equal Protection claims as to the tablet confiscation, transfer to segregation, and removal from the Faith and Character Program fail because she does not identify, with admissible evidence beyond her own conclusory allegations, similarly situated prisoners at Johnson State Prison who were treated more favorably by Defendants. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").

Regarding the tablet confiscation, Plaintiff contends other prisoners were permitted to maintain possession of contraband, but could not name the inmate to whom she claims a contraband tablet was returned. (Conyers Dep., p. 37.) Moreover, Plaintiff concedes Defendants were not the prison officials who returned the contraband tablet to the unidentified inmate, nor did they see this event happen. (Id. at 38.) Defendant Roach declares he confiscated the tablet from Plaintiff because he believed the tablet violated security rules and not because of Plaintiff's gender identity. (Roach Decl., ¶ 6.)

Likewise, Plaintiff fails to establish the existence of a similarly situated comparator with regards to her transfer to segregation following the tablet confiscation. Plaintiff acknowledges she was transferred to segregation for a pending investigation and was unable to identify any other inmate who was under a pending investigation and was *not* transferred to segregation. (Conyers Dep., p. 25.) In fact, the cisgender inmate she met in segregation, Inmate Sanders, was similarly assigned to segregation for a pending investigation, suggesting equally favorable treatment of inmates with different gender identities, rather than the disparate treatment Plaintiff alleges. (Id. at 28, 30.)

Lastly, Plaintiff also fails to establish a similarly situated comparator with regards to her removal from the Faith and Character Program. Plaintiff concedes she allowed outside inmates to access the Faith and Character dormitory. (Conyers Dep., p. 37.) Defendant Bragg received complaints concerning Plaintiff's behavior, investigated those complaints, determined Plaintiff was violating Program policies, and removed Plaintiff from the Faith and Character Program as a result. (Bragg Decl., ¶¶ 6-9.) Although Plaintiff alleges other inmates violated the same rule and faced no consequences, she failed to identify any inmates specifically and conceded Defendant Bragg would not have been aware of such behavior.

(Conyers Dep., pp. 44, 49.)  Moreover, Defendant Bragg declared she was unaware of other inmates violating the same policy and, had she become aware of such behavior, she would remove those inmates from the Faith and Character Program as well.  (Bragg Decl., ¶ 10.)

As to all three events underlying Plaintiff's Equal Protection claims, Plaintiff's only attempts to identify similarly situated inmates who were treated more favorably consist of Plaintiff's conclusory allegations that unidentified inmates received better treatment.  Such allegations are insufficient to meet Plaintiff's burden to demonstrate she is similarly situated with other prisoners who received more favorable treatment to sustain an Equal Protection claim.  See Jones v. Rodgers, No. 21-11466-D, 2022 WL 1416302, at *1 (11th Cir. Jan. 25, 2022) ("[S]ummary judgment was appropriate on [plaintiff]'s equal protection claim because he failed to establish that similarly-situated prisoners of another race were treated differently by the prison officials." (citing Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006))); Davila v. Marshall, 649 F. App'x 977, 982 (11th Cir. 2016) (*per curiam*) (holding plaintiff's "bare assertion, without more, is simply not enough to defeat a motion for summary judgment" where plaintiff presented no evidence supporting his allegation that comparator inmates of other religions were treated more favorably).

Moreover, to the extent Plaintiff implies her Equal Protection claims are supported by inconsistent application of prison policies by various prison officials, "[i]nconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection."  Smith v. Hatcher, No. CV 219-167, 2021 WL 6006298, at *9 (S.D. Ga. Dec. 20, 2021).  Accordingly, Plaintiff's allegations concerning a non-Defendant's return of contraband to an unidentified inmate, as well as her allegations that other inmates also violated the Faith and Character Program policies, are insufficient for her claims to survive summary judgment.

In sum, Plaintiff cannot meet her burden of proof on all elements of her Fourteenth Amendment Equal Protection claims, and Defendants are entitled to summary judgment.

### D.     Qualified Immunity

Because Defendants are entitled to summary judgment on the merits of Plaintiff's claim, the Court need not address Defendants' qualified immunity argument. See Scott v. Harris, 550 U.S. 372, 377 (2007) (requiring showing of violation of a constitutional right to complete qualified immunity analysis); Grochowski v. Clayton Cnty., Ga., 961 F.3d 1311, 1319 (11th Cir. 2020) (same); see also Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*) (recognizing no need to address qualified immunity defense when summary judgment granted on substance of deliberate indifference claim).

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 24), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 30th day of October, 2024, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA